**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MERCEDES-BENZ U.S.A LLC, | : | |
| | : | **OPINION** |
| Plaintiff/Counterclaim Defendant, | : | |
| | : | Civil Action No.: 99-3121 (WHW) |
| v. | : | |
| | : | |
| COAST AUTOMOTIVE GROUP, LTD., and | : | |
| TAMIM SHANSAB, | : | |
| | : | |
| Defendants/Counterclaimants/Third | : | |
| Party Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID MICHAEL MOTOR CARS CORP., | : | |
| RAY CANTENA MOTOR CARS CORP., and | : | |
| CONTEMPORARY MOTORCARS, INC., | : | |
| | : | |
| Third Party Defendants. | : | |
| | : | |

**Walls, Senior District Judge**

This Opinion addresses motions by (1) plaintiff Mercedes-Benz USA, LLC ("MBUSA"

or "plaintiff") for partial summary judgment and to exclude the expert testimony of Howard M.

Markovitz ("Markovitz") and John A. Del Roccili ("Del Roccili"), (2) defendants/counter-

claimants/third-party plaintiffs Coast Automotive Group Ltd. ("Coast") and Tamim Shansab

("Shansab") (collectively "Coast defendants") for partial summary judgment on their

counterclaims, summary judgment on MBUSA's Amended Complaint and to exclude the expert

testimony of Albert Parziale, and (3) third-party defendants David Michael Motor Car Corp.

("David Michael") and Contemporary Motor Cars, Inc. ("Contemporary") for summary judgment

**NOT FOR PUBLICATION**

on Coast defendants' counterclaims that relate to them.

## FACTS AND PROCEDURAL BACKGROUND

The procedural history of this case is, to put it mildly, complex.  Specifically, this

litigation concerns the validity of the termination, by MBUSA, of the Mercedes Benz franchise

held by Coast.  Coast was an MBUSA dealer located in Toms River, New Jersey; Shansab is the

owner operator of the dealership.  In addition to Mercedes-Benz automobiles, Coast acted as a

dual franchise with Porshe, Audi and Volkswagen.[1]  (See Certification of Raymond Dupell

(hereinafter "Dupell Cert."), Ex. F.)  A franchise between Coast and MBUSA was created by

Dealer Agreement on January 1, 1992.  As part of the Dealer Agreement, MBUSA reserved the

right to unilaterally terminate the agreement and the license of the trademarks thereunder, if

Coast failed to meet certain contractual obligations.  MBUSA contends that its termination of the

franchise agreement was justified because Coast: (1) made fraudulent misrepresentations in its

application to enter into an agreement, specifically, the concealment of the existence of foreign

investors, (2) failed to maintain floor plan financing with an acceptable financial institution, (3)

failed to comply with working capital and other financial requirements of the agreement, and (4)

failed to comply with facility requirements.   MBUSA sent notice of termination to Coast on June

10, 1999, and fearful that Coast would not voluntarily comply with the termination, MBUSA

filed this complaint, later amended to add Count Three, seeking an injunction for Coast's alleged

---

[1]  Dualing is a common practice among automobile franchisees involving the sale of two
or more different vehicle lines from the same location.  See General Motors Corp. v. New A.C.
Chevrolet, Inc., 91 F. Supp. 2d 733, 736 n.1 (D.N.J. 2000).

**NOT FOR PUBLICATION**

dilution of MBUSA's federal trademark by not using the proper designated indicia of the mark,

such as signs, literature and other visible indicia of the mark pursuant to 15 U.S.C. § 1125(c)

(Count One), seeking an injunction for Coast's alleged false designation of origin and false or

misleading description of goods and services following the termination of the franchise

agreement pursuant to 15 U.S.C. § 1125(a) (Count Two), and seeking rescission of the Dealer

Agreement and damages based on Coast's fraud in the inducement of the franchise agreement

(Count Three).

In response to MBUSA's Amended Complaint, Coast defendants filed counterclaims

alleging a violation of the New Jersey Franchise Practices Act ("NJFPA") (Count One), breach of

contract (Count Two), breach of the implied covenant of good faith and fair dealing (Count

Three) and violation of the Automobile Dealer's Day in Court Act ("FDDCA") (Count Four).

Coast defendants later amended their counterclaim and added third-party defendants David

Michael, Contemporary, and Ray Cantena Motor Cars Corp. ("Ray Cantena"). The amended

counterclaim added a single new count against MBUSA for violation of the Sherman and

Clayton Acts (Count Five) and added claims against MBUSA and third-party defendants for

common law restraint of trade (Count Six), tortuous interference with prospective economic

advantage (Count Seven), tortuous interference with contract (Count Eight), unfair competition

(Count Nine), and violation of the New Jersey Antitrust Act (Count Ten).

Initially, MBUSA's Amended Complaint was assigned to the Hon. Mary L. Cooper in the

Trenton vicinage, who entered an order on September 13, 1999, preliminarily enjoining Coast

from any further use of the Mercedes-Benz trademark. In entering the preliminary injunction,

**NOT FOR PUBLICATION**

Judge Cooper declined to enter such relief as to Count One, the dilution claim, because there was no irreparable harm to plaintiff given that the franchise was due to be terminated and the problem of dilution would be mooted by this action.  On Count Two, the likelihood of confusion argument, Judge Cooper noted that granting the injunction depended on the validity of the termination of the franchise.  Judge Cooper discussed the fact that notice of termination by MBUSA was provided to Coast, and thus upon termination, a preliminary injunction preventing Coast's use of MBUSA trademarks was appropriate.  Judge Cooper's preliminary injunction was upheld by the Third Circuit in an unpublished opinion issued on June 5, 2001.  Following Judge Cooper's issuance of the preliminary injunction, the case was transferred to the Hon. Alfred M. Wolin in the Newark vicinage on December 28, 2000.  On March 20, 2001, the Court ordered that this matter and the class action lawsuit, In re Mercedes-Benz Antitrust Litig., 99-cv-4311, be consolidated for discovery purposes.  The consolidation of these cases was based primarily on defendants' counterclaim involving allegations of Sherman and Clayton Act violations on the part of MBUSA, claims which are central to the pending class action.  Indeed, Shansab provided significant testimony relating to the alleged antitrust violations.  See In re Mercedes-Benz Antitrust Litigation, 2006 WL 2129100, at *12 (D.N.J. July 26, 2006).

On August 1, 2005, the parties filed respective motions for summary judgment. Specifically, MBUSA filed a motion for summary judgment on Count Two of its Amended Complaint and for summary judgment on all of the Coast defendants' counterclaims.  Related to this motion, MBUSA sought to strike the testimony and opinions of Howard M. Markovitz ("Markovitz") and John A. Del Roccili ("Del Roccili").  The testimony of Markovitz and Del

**NOT FOR PUBLICATION**

Roccili is necessary to aid in calculating damages resulting from conduct involving

discriminatory automobile allocation alleged in the Coast defendants' counterclaims.  Coast

defendants have also made several motions seeking summary judgment on (1) Counts One and

Two of their counterclaim alleging breach of contract and violation of the NJFPA, and (2)

MBUSA's Amended Complaint in its entirety.  Related to their summary judgment motions, the

Coast defendants also seek to strike the testimony and report of Albert Parziale.  Mr. Parziale's

testimony addresses issues regarding the financial operation and records of Coast that ultimately

relate to the termination of the Coast franchise.  Finally, both David Michael and Contemporary

have filed motions seeking summary judgment on the counterclaims alleged only against them.

The Court will address each parties' motions in turn.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the moving party establishes that "there is no

genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).  A factual dispute between the parties will not defeat a motion for summary

judgment unless it is both genuine and material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

247-48 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the

non-movant and it is material if, under the substantive law, it would affect the outcome of the

suit.  Id. at 248.  The moving party must show that if the evidentiary material of record were

reduced to admissible evidence in court, it would be insufficient to permit the non-moving party

to carry its burden of proof.  Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more

NOT FOR PUBLICATION

than simply show that there is some metaphysical doubt as to the material facts in question."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  To survive a

motion for summary judgment, a non-movant must present more than a mere scintilla of

evidence in his favor.  Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  The

opposing party must set forth specific facts showing a genuine issue for trial and may not rest

upon the mere allegations or denials of its pleadings.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d

Cir. 2001).  At the summary judgment stage the Court's function is not to weigh the evidence and

determine the truth of the matter, but rather to determine whether there is a genuine issue for

trial.  Anderson, 477 U.S. at 249.  In doing so, the Court must construe the facts and inferences in

the light most favorable to the non-moving party.  Curley v. Klem, 298 F.3d 271, 277 (3d Cir.

2002).

## DISCUSSION

### I.  MBUSA's Motions

 MBUSA seeks summary judgment on Count Two of its Amended Complaint, and on all

of the Coast defendants' counterclaim.  In addition, MBUSA moves to strike the testimony and

reports of two of the Coast defendants' experts.

#### A.  Motion for Summary Judgment on Count Two of Amended Complaint

 MBUSA moves for summary judgment on Count Two of its Amended Complaint which

seeks a permanent injunction for Coast's alleged false designation of origin and false or

misleading description of goods and services following the termination of the Mercedes-Benz

franchise agreement pursuant to 15 U.S.C. § 1125(a).  As noted, Judge Cooper who was

NOT FOR PUBLICATION

originally assigned this case, entered a preliminary injunction against Coast's use of MBUSA's

trademark following the termination of the franchise agreement.  Judge Cooper noted that the

granting of a preliminary injunction was dependant upon a proper termination of the franchise

agreement.  To secure the extraordinary relief of a preliminary injunction, MBUSA had to

demonstrate that "(1) [it was] likely to succeed on the merits; (2) denial [would] result in

irreparable harm; (3) granting the injunction [would] not result in irreparable harm to the

defendant[s]; and (4) granting the injunction [was] in the public interest." Maldonado v.

Houston, 157 F.3d 179, 184 (3d Cir. 1998), cert. denied, 526 U.S. 1130 (1999) (as to a

preliminary injunction).  A plaintiff must establish that all four factors favor preliminary relief.

Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187 (3d Cir. 1990).  The standards

for a permanent injunction are essentially the same as for a preliminary injunction, except that the

plaintiff must show actual success on the merits, not a likelihood of success, to obtain a

permanent injunction.  See University of Texas v. Camenisch, 451 U.S. 390, 392 (1981).  Thus,

plaintiff will succeed and the Court will grant a permanent injunction on Count Two of the

Amended Complaint if plaintiff can demonstrate that termination of the franchise agreement was

proper.

        To support its claim that termination of the franchise was proper, plaintiff alleges several

failures to perform specific obligations under the franchise agreement.  Plaintiff places heaviest

reliance on alleged misrepresentations made by Shansab regarding the source of funds available

to capitalize the dealership.  The Application for Dealership Agreement and the Franchise

Agreement, both signed by Shansab, provide that any such misrepresentations made with regard

**NOT FOR PUBLICATION**

to the application for a dealership are proper grounds for termination of the Franchise

Agreement.  Plaintiff alleges that before termination of Coast's Franchise Agreement, it

discovered that a portion of the funds that Coast claimed as capitalization for the dealership was

actually encumbered loans from private investors,[2] in direct violation of the Franchise

Agreement.[3]  More importantly, plaintiff asserts that issue preclusion, or what is more formally

known as collateral estoppel, precludes the Coast defendants from litigating the propriety of the

franchise termination.  Specifically, plaintiff points to a decision by Judge Garrett Brown (now

Chief Judge) in Coast Automotive Group, Ltd. v. VW Credit, Civ. No 97-2601 (D.N.J. Oct. 30,

2002) (slip opinion).  In Coast, Volkswagen brought suit against Coast seeking rescission of the

Volkswagen Dealer Agreement on grounds identical to this case, namely that Coast had

misrepresented the source and nature of its funding.  The rescission claim was tried as a bench

trial before Judge Brown.  While Judge Brown entered judgment in favor of Coast and denied

---

[2]  Plaintiff claims it originally learned of the true nature of the source of the funds through Shansab's trial testimony in an unrelated case before Judge Cooper in which Shansab unsuccessfully alleged that Toyota had discriminated against him based on his race and national origin in not allowing him to acquire two Toyota dealerships.  In that case, Shansab testified that:

> Q:  Okay.  And to Mercedes Benz you represented that you had in cash in the bank $2.39 million, is that right?
> A:  That's correct.
> Q:  That was money, money that had come from Japanese investors, right?
> A:  That's correct.
> Q:  Did you ever disclose the source of those funds to Mercedes-Benz?
> A:  No, I did not.

[3]  Section 15T(h) of the Franchise agreement allows for termination based on "[a]ny misrepresentation by Dealer or by any Dealer Operator or Owner in applying for this dealer Agreement, or regarding the source of funds or capitalization of Dealer."

**NOT FOR PUBLICATION**

Volkswagen's claim for rescission based on Volkswagen's failure to prove scienter, the Court

made detailed factual findings including that "the Court finds by clear and convincing evidence

that the $2.5 million provided to Shansab by his Japanese friends was encumbered" and further

that,

> As stated, this Court finds that Tamim Shansab and Nasir Shansab misrepresented
> to [Volkswagen] that the $2.5 million they received from their Japanese friends
> and intended to invest in Coast through TSE was completely unencumbered.
> There is little doubt that this fact was material to the approval of the franchise
> applications.  Likewise, the very fact and nature of the application indicates that
> the Shansabs obviously intended that the defendants rely on the information
> provided and that the defendants did in fact rely on it.

(Certification of Michael S. Waters ("Waters Cert."), Ex. 12.)  This decision was not appealed.

In addition, Coast brought claims under the New Jersey Franchise Practices Act and the

Automobile Dealer's Day in Court Act which were tried before a jury which found in favor of

Volkswagen based on Coast's violation of the Franchise Agreement.  That jury verdict was

upheld by the Third Circuit in an unpublished opinion.  See Coast Automotive Group, Ltd. v.

VW Credit, Inc., 119 F. App'x. 419, 424-25 (3d Cir. 2005) (hereinafter "VW Credit").  In

upholding the jury's verdict, the Third Circuit found

> [W]e find the evidence is sufficient to support the verdict based on Coast's
> substantial noncompliance in materially misrepresenting its financial ability in the
> dealer application. . . .  Here, Tamim Shansab and Nasir Shansab represented on
> the dealer application that their personal investments of $1.6 million and $400,000
> respectively were unencumbered. Nowhere did they disclose that the money
> actually came from investors in Japan. In a separate agreement with these
> investors, Tamim Shansab agreed to repay $1.7 million and to grant the investors
> a beneficial ownership interest in the dealership. VOA/AOA relied on Shansab's
> representations of his financial ability and those representations were central to
> VOA/AOA's decision to grant the dealership to Coast. Shansab's failure to
> disclose that the money he promised was not his and that investors wholly
> unknown to VOA/AOA had an ownership interest in the dealership constituted a

**NOT FOR PUBLICATION**

> material breach of the express terms of the dealership application. Thus, the
> evidence was sufficient for the jury to find under § 56:10-9, that Coast failed to
> substantially comply with the franchise dealership application.

Id.

Based on these judicial determinations, MBUSA argues that Coast is collaterally

estopped in this case from claiming that MBUSA's termination was improper.  The doctrine of

collateral estoppel, as applied by New Jersey courts, requires demonstration of these elements:

(1) the issue presented in the earlier action was identical to the one raised in a later action; (2)

there was a final judgment on the merits; (3) the party asserting the issue earlier is the same or is

in privity with the party currently raising the issue; (4) the party was given a full and fair

opportunity to litigate the issue; and (5) the determination of the issue was essential to the final

judgment.  See Matter of the Estate of Dawson, 136 N.J. 1, 20 (1994).  Here, the Coast

defendants claim that neither factual findings by either the Third Circuit or by the District Court

were "essential" to the final judgments.  Coast defendants argue that because the District Court

found against Volkswagen its factual findings were therefore not essential to the ultimate

decision and alternatively Coast defendants assert that because the Third Circuit noted an

alternative basis to support the jury verdict on appeal, that its factual findings regarding the

funding were technically not essential to the Circuit's affirmance of the jury verdict.

The Court finds that the District Court's factual findings that were made in reference to

Volkswagen's rescission motion were not essential to the court's ruling.  The District Court

ultimately determined that the plaintiff had failed to prove the requisite scienter requirement in

order to grant the relief of rescission sought by the dealer.  Ultimately, the issue of scienter was

**NOT FOR PUBLICATION**

dispositive and related in no way to its factual holdings regarding the encumbered funding.  As such, these findings could not be deemed essential for purposes of collateral estoppel.

However, the Third Circuit's findings regarding the issue of improper funding are essential and are properly subject to application of collateral estoppel to bar Coast defendants from litigating the issue of whether the funding was proper.  This Court has previously noted that alternative holdings are considered necessary to the final judgment and thus retain preclusive effect.  See McCendon v. The Continental Group, Inc., 660 F. Supp. 1553, 1561 (D.N.J. 1987) (noting that "even if the holdings are considered as alternative grounds, the Restatement, generally adopted by the Third Circuit, states that alternative holdings on appeal are 'necessary' to judgment and therefore preclusive" (citations omitted)); see also Restatement (Second) of Judgments § 27, comment O (1982); In re Dalkon Shield Punitive Damages Litig., 613 F. Supp. 1112, 1117 (E.D. Va. 1985); 18 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 4421 (2002).  As such, this Court finds that plaintiff's termination of the franchise was proper, given preclusive effect of the Third Circuit's determination that the misrepresentations made by Shansab regarding the source of funds available to capitalize the dealership were in direct conflict with the performance obligations of the franchise agreement.

Because plaintiff's claim for a permanent injunction is dependant on a determination that the termination was proper, the Court finds that since plaintiff's termination of the Coast franchise was proper, plaintiffs have demonstrated actual success on the merits to support the grant of a permanent injunction against Coast defendants regarding the use of the Mercedes-Benz trademark by defendants.  The grant of injunctive relief is appropriate here and now to prevent

-11-

**NOT FOR PUBLICATION**

the future use of the trademark by defendants who, although they have long since discontinued their use of the trademark, continue to resist plaintiff's claim and indeed seek reinstatement of their franchise by counterclaims.  See Apollo Distrib. Co. v. Jerry Kurtz Carpet Co., Inc., 696 F. Supp. 140, 143 (D.N.J. 1988).  Coast is hereby permanently enjoined from any use of the tradename, trademark, and servicemark "Mercedes-Benz," and the Mercedes-Benz logo and Three-Pointed Star, both two and three dimensional, registered in the United States Patent and Trademark Office under U.S. trademark and service mark registration numbers 1,045,081; 1,045,080; 1,060,986; 657,387; 661,311; and 657,386 on any property, real or personal, in any business dealings with any person or entity and in any advertisements.

**B.  Motion for Summary Judgment on Counts One through Four of Coast Defendants' Counterclaim**

Plaintiff asserts that a determination by this Court that the franchise agreement between plaintiff and Coast was properly terminated will effectively dismiss the Coast defendants' counterclaims for violation of the NJFPA (Count One), breach of contract (Count Two), breach of the duty of good faith and fair dealing (Count Three) and violation of the Automobile Dealer's Day in Court Act ("ADDCA") (Count Four).  Plaintiff contends that it is entitled to summary judgment pursuant to N.J.S.A. 56:10-9 which provides that:

> It shall be a defense for a franchisor, to any action brought under this act by a franchisee, if it be shown that said franchisee has failed to substantially comply with the requirements imposed by the franchise and other agreements ancillary or collateral thereto.

N.J.S.A. 56:10-9 (West 2001).  Curiously, plaintiff seems to suggest, without providing any support for the position, that this provision in the NJFPA is somehow applicable to its common

-12-

**NOT FOR PUBLICATION**

law claims and its federal ADDCA claim.  This is not the case, as the defense applicable in the New Jersey statute is applicable only to actions "brought under this act."  Id.  As such, the Court will apply its determination that termination of the franchise agreement was proper to each counterclaim separately.

To begin, the Court finds that there is no genuine issue of material fact regarding Coast defendants breach of contract counterclaim.  As noted, the franchise agreement explicitly established plaintiff's right to unilaterally terminate the agreement and the license of the trademarks thereunder, if Coast failed to meet certain contractual obligations.  This Court has determined that collateral estoppel should be applied by the Third Circuit's earlier determination that the Coast defendants had made misstatements regarding the nature of the funding for the franchise.  Because the contract provided for the right to unilaterally terminate the agreement in the event that the franchisee made any misstatements as to the funding of the franchise, there can be no dispute that plaintiff's actions constitute a breach of the agreement.[4]  As such, Count Two of Coast defendants' counterclaim is dismissed.

At first glance, Coast defendants' counterclaim for breach of the NJFPA appears to be

---

[4]  In their own motion seeking summary judgment on Counts One and Two of the counterclaim, Coast defendants argue that summary judgment in favor of plaintiff on the breach of contract claim is not warranted but should be granted in their favor because plaintiff failed to pay Coast defendants a certain sum owed for the return of parts as outlined by the franchise agreement.  Specifically, pursuant to the franchise agreement and the NJFPA, a franchisor must compensate a franchisee for certain expenses following termination of the agreement.  However, as plaintiff notes, this argument is misplaced because Coast defendants' argument is unrelated to the underlying claim asserted in their counterclaim.  In their counterclaim, Coast defendants seek damages that resulted from the improper termination of the franchise agreement, not for contractual amounts due under the agreement or that may be required by statute.

-13-

**NOT FOR PUBLICATION**

completely precluded by the explicit language of N.J.S.A. 56:10-9.  Indeed, at least several courts

have recognized that § 56:10-9 "allows a franchisee's substantial noncompliance to serve as a

complete defense to any action brought under the NJFPA."  VW Credit, 119 F. App'x. at 423-24;

see also General Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 321 n.11 (3d Cir.

2001); In re The Matterhorn Group, Inc., 2002 WL 31528396 (Bankr. S.D.N.Y. Nov. 15, 2002);

Zaro Licensing, Inc. v. Cinmar, Inc., 779 F. Supp. 276, 286 (S.D.N.Y. 1991) ("It is a defense to a

claim brought under the act [NJFPA] by a franchisee that the franchisee has failed to comply

substantially with the requirements imposed by the franchisor").  However, the Third Circuit has

questioned whether a parties' good faith is relevant to a claim under the Act.  General Motors

Corp., 263 F.3d at 321 n.11.  In a wide ranging footnote, the Third Circuit in General Motors

Corp. expressed some doubt as to whether the statutory definition of good cause for terminating

the franchise agreement necessarily precluded claims that the franchisor acted in bad faith.

Compare id. (noting that the Franchise Act specifically defines good cause which focuses on the

objective actions of the franchisee and not on subjective motivations and that § 56:10-9 "allows a

franchisee's substantial noncompliance to serve as a complete defense in 'any action' instituted

under the [Act]"), with id. (noting that New Jersey courts in construing other provisions of the

franchise statute, have imposed good faith requirements in particular circumstances.).

      In an unpublished opinion involving Coast, the Third Circuit again addressed whether the

absolute defense of § 56:10-9 is contrary to the common law duty of good faith and fair dealing

as codified in § 56:10-7(e) of the NJFPA and whether such a duty should be applicable to the

entire statute.  See VW Credit, 119 F. App'x. at 424.  The Court determined that:

-14-

NOT FOR PUBLICATION

Even if we assume that § 56:10-7(e) codifies the common law duty of good faith and fair dealing and that § 56:10-9 effects a change by providing a defense to franchisors not available at common law, we are not persuaded that § 56:10-9 is inconsistent with or inapplicable to actions brought under § 56:10-7(e). In New Jersey, statutes that impose duties or burdens, or establish rights, or provide benefits not recognized by common law, are subject to strict construction. *It is clear that if the statutory defense makes any change in the common law at all, it does so only with regard to those cases where the franchisee also breached the franchise agreement.*

Id. (emphasis added) (internal citations omitted).  Given the clear language of the statute and in accordance with the Third Circuit's dicta, the Court finds that the NJFPA should be read to preclude any claim under the Act alleging bad faith when it has been demonstrated that the franchisee substantially failed to comply with the agreement.  Because the Court has held that Coast defendants failed to substantially comply with the franchise agreement, summary judgment for plaintiff on Count One is now appropriate.

Counts Three and Four of Coast defendants' counterclaim involve allegations of bad faith.  Specifically, the Coast defendants allege that plaintiff breached the covenant of good faith and fair dealing and the ADDCA which requires automobile manufacturers "to act in good faith in performing or complying with any of the terms or provisions of the [automobile] franchise, or in terminating . . . the franchise with said dealer . . . ."  15 U.S.C. § 1222.  The Court notes that Coast defendants' claims which are premised on allegations of bad faith are necessarily separate and independent from the alleged breach of the franchise agreement claim.  That is to say, Coast defendants' failure to allege a breach of contract claim is not dispositive of its claims involving allegations of bad faith.  See Bak-A-Lum Corp. v. Alcoa Bldg. Prod., 69 N.J. 123, 129-30 (1976) (Noting that a breach of the implied covenant of good faith and fair dealing differs from a "literal

-15-

**NOT FOR PUBLICATION**

violation of a contract"); <u>Wilson v. Amerada Hess Corp.</u>, 168 N.J. 236, 244, 773 A.2d 1121

(2001) (citing <u>Sons of Thunder, Inc. v. Borden</u>, 148 N.J. 396, 419, 690 A.2d 575 (1997))

("Although the implied covenant of good faith and fair dealing cannot override an express term

in a contract, a party's performance under a contract may breach that implied covenant even

though that performance does not violate a pertinent express term."); <u>Northview Motors, Inc. v.</u>

<u>Chrysler Motors Corp.</u>, 227 F.3d 78, 93 (3d Cir. 2000) ("if an ADDCA defendant has objectively

valid reasons for terminating its relations with a dealer, the dealer cannot prevail in an ADDCA

action absent evidence that the defendant had an ulterior motive for its action").

Here, a genuine issue of material fact exists regarding whether plaintiffs retained an

ulterior motive for terminating Coast's franchise agreement, namely that plaintiff sought to

punish Coast defendants for refusing to participate in an alleged price fixing conspiracy.  Plaintiff

vigorously denies the Coast defendants' allegations regarding the existence of such a conspiracy.

But, this Court has already determined in the related class action that genuine issues remain

regarding the existence of any conspiracy.  Here, there remains a genuine issue regarding whether

Coast defendant's alleged resistance to such an alleged conspiracy formed the basis for

retaliatory conduct on the part of plaintiff by terminating the franchise agreement.  Regardless of

whether an independent, objective basis exists for such a termination, what remains at issue is the

subjective motivations of the plaintiff.  For these reasons, plaintiffs motion for summary

judgment on Counts Three and Four of Coast defendants' counterclaims is denied.

> **C. Plaintiff's Motions for Summary Judgment on Counts Five through Ten of Coast Defendants' Counterclaim and to Exclude the Expert Testimony of Markovitz and Del Roccili**

NOT FOR PUBLICATION

Plaintiff moves for summary judgment on all of Coast defendants' counterclaims based on their failure to allege damages.  Proof of damages is a necessary element of Coast defendants' claims and summary judgment is proper if Coast defendants cannot prove damages at trial.  See Rocci v. MacDonald-Carter, 323 N.J. Super 18 (App. Div. 1999).  Plaintiff's motion is premised entirely on its claim that Coast defendants' expert testimony regarding damages is unrelaible pursuant to Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993).  Plaintiff argues that Coast defendants' counterclaims allege that plaintiff punished Coast for not joining the alleged price-fixing conspiracy by failing to provide Coast with the cars that Coast claims it would have received under plaintiff's allocation system. Markovitz and Del Roccili offered expert opinions regarding plaintiff's alleged failure to allocate cars and the resulting damages from such allocation failures.  Because a determination that the opinions of Markovitz and Del Roccili are invalid under Daubert would leave Coast defendants with no evidence of damages resulting from the alleged improper allocation, the parties have extensively briefed this issue.  For the following reasons, the Court finds that the opinions of Markovitz and Del Roccili are not reliable, should be stricken and the Court grants summary judgment on Counts Five through Ten of Coast defendants amended counterclaim.[5]

─────────────────────

[5]  Plaintiff suggests that if the Court determines that Coast defendants are unable to prove damages based on the striking of the expert testimony of Markovitz and Del Roccili, that the Court should grant summary judgment on all of Coast defendants counterclaims including Counts One through Four.  Counts Five through Ten of the amended counterclaim added a single new count against MBUSA for violation of the Sherman and Clayton Acts (Count Five) and added claims against MBUSA and third-party defendants for common law restraint of trade (Count Six), tortuous interference with prospective economic advantage (Count Seven), tortuous interference with contract (Count Eight), unfair competition (Count Nine), and violation of the New Jersey Antitrust Act (Count Ten).  These claims were premised on Coast defendants'

NOT FOR PUBLICATION

Rule 702 of the Federal Rules of Evidence governs the standards applicable for admission

of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact
> to understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto
> in the form of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods reliably to the
> facts of the case.

Fed.R.Evid. 702.

The Third Circuit has addressed the contours of Rule 702 explaining that the rule

"embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit."

Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003); see also

In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 741-43 (3d Cir. 1994) ("Paoli II")(citing

Daubert, 509 U.S. 579).  The qualification element has been interpreted to require that the

witness possess specialized expertise, but has been applied broadly by the Third Circuit such that

"a broad range of knowledge, skills, and training qualify an expert." Id.   The plaintiff does not

challenge the qualifications of either Markovitz or Del Roccili.

More relevant here is the requirement that expert testimony be reliable.  In interpreting

this requirement, the Third Circuit has required testimony to "be based on the 'methods and

---

allegations regarding a conspiracy to deny a reasonable allocation of automobile to the Coast
dealership.  Alternatively, Coast defendants counterclaims One through Four, discussed above,
although incorporating the allegations regarding alleged improper allocation, are premised
primarily on plaintiff's alleged wrongful termination of the parties' franchise agreement.  As
such, failure to prove damages resulting from the alleged conspiracy to deny a reasonable
allocation does not impact those claims that depend on allegations that plaintiff acted in bad faith
in terminating the franchise.

NOT FOR PUBLICATION

procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert

must have 'good grounds' for his on her belief.  In sum, Daubert holds that an inquiry into the

reliability of scientific evidence under Rule 702 requires a determination as to its scientific

validity."  Paoli II, 35 F.3d at 742 (quoting Daubert, 509 U.S. at 590).  The Third Circuit has

identified a list of non-exhaustive factors that a district court may consider in determining a

proposed expert's reliability

    As a final component of assessing proposed expert testimony, Rule 702 requires that the

testimony must fit the issues in the case.  "In other words, the expert's testimony must be relevant

for the purposes of the case and must assist the trier of fact."  Schneider, 320 F.3d at 404.  The

Supreme Court in Daubert noted that "Rule 702' s 'helpfulness' standard requires a valid

scientific connection to the pertinent inquiry as a precondition to admissibility."  509 U.S. at

591-92.

    Pursuant to the limitations in Rule 702, the district court is mandated the role of

gatekeeper, assuring that opinion testimony that does not meet the requirements of qualification,

reliability and fit from reaching the jury.  See Daubert, 509 U.S. at 592 ("Faced with a proffer of

expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule

104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1)

scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in

issue.").

    Plaintiff's primary challenge to Markovitz and Del Roccili's testimony is the reliability

and fit of that testimony.  Essentially, plaintiff claims that there is no foundation for the

-19-

**NOT FOR PUBLICATION**

assumptions made by Coast defendants' experts in their reports and that their methodology to calculate future allocations and subsequent damages was flawed and arbitrary.  That claim has merit.

At the outset, the Court finds unpersuasive Coast defendants' argument that plaintiff's failure to produce its own expert opinions requires the Court to permit the testimony of Markovitz and Del Roccili because it remains unrebutted.  This argument misses the mark precisely because the burden to prove damages and to prove the reliability of expert opinions with regard to those damages remains with *Coast*, not MBUSA.  See Soldo v. Sandoz Pharmaceuticals Corp., 244 F. Supp. 2d 434, 558 (W.D. Pa. 2003) (noting under similar circumstances that allowing expert testimony based on an opposing parties failure to present an expert of its own "would turn Rule 702 and Daubert on their heads by allowing the absence of reliable testing and data to support a causation opinion.  Such an approach would also flip the relevant burdens-it is plaintiff who has the burden of proving causation and the reliability of her experts' testimony.").

1.  *Challenge to Markovitz's Opinion*

Plaintiff argues that Markovitz's expert opinion is unreliable because he made no computations of automobile allocations based on Coast's actual sales and in fact did not look at any of the circumstances surrounding Coast's operation to make an assessment of what constituted a reasonable allocation.[6]  Instead, Markovitz looked only at the average growth in the

---

[6]  The Court notes that Markovitz's expert report contains no analysis and consists entirely of profit schedules based on factual assumptions that the report does not explain or analyze in any significant way.

-20-

**NOT FOR PUBLICATION**

retail sales of New York area dealers and relied entirely on Shansab's statement that Coast

received a fair allocation in 1994 but not in 1995 until termination of the franchise in 1999.  In

particular, Markovitz admitted that he did not consider any other factors, including the specific

number of cars allocated to Coast other than assuming that Coast allocations should have

increased at a rate equal to the average of all Mercedes-Benz dealers in the tristate area.  In

addition, Markovitz failed to address the fact that Coast was allocated more automobiles than the

dealership actually purchased.

The following deposition testimony of Markovitz summarizes the basis for his opinion:

Q:   Did [Shansab] tell you that 1994 was the last year that he got his proper
     allocation?
A:   I don't–I would say yes.
. . . .
Q:   [D]id Mr. Shansab tell you that in 1995 and thereafter he was punished by
     Mercedes-Benz by being given reduced allocations?
A:   That was my understanding.
Q:   From what he told you?
A:   Yes.
Q:   And that these were allocations that were less than he was entitled to as an
     allocation under their allocation system?
A:   I don't know if he referred to it in that manner.
Q:   But he claimed to be entitled to more cars?
A:   That's correct.
Q:   ...Do you have any other letters –
A:   No.
Q:   –that show what the allocation –
A:   No.
Q:   –given to him was?
A:   No, I do not.
Q:   Now, did you ask for the allocation records–
A:   No.
Q:   –of Coast?
A:   No.
...
Q:   Did you ask for the allocation records of other dealers in the Northeast

NOT FOR PUBLICATION

|     | region? |
| --- | --- |
| A: | No. |
|     | . . . |
| Q: | And Mr. Shansab told you that what he actually got, that his allocation for 1995 was not a fair allocation, that he was punished during that year? |
| A: | That's correct. |
| Q: | Okay.  And you accepted that statement from him, that he was punished during that year? |
| A: | Yes, I did. |
| Q: | And you based your report on that? |
| A: | No.  I based my report on the amount–his percentage of the sales in the New York region in 1994, when he claimed was the last year he received a fair allocation of cars, and in increasing his unit sales every year after that, based on the percentage of increase in sales in the New York region, I came up with the number that he would have received, and then–do you want me to stop? |
| Q: | No.  Go ahead. |
| A: | –and then I compared it to the number of units he would have received to the total units in the region and his share percentage was close to what it was for 1994 to verify that I had done the projection properly. |
|     | . . . . |
| Q: | Okay but the premise of your report is that what he actually was offered and what he actually received in '95 was not his fair allocation but was a punishment allocation.  You started with that assumption? |
| A: | Yes. |
| Q: | Okay.  And that you got from Mr. Shansab? |
| A: | That's correct. |
| Q: | Okay.  And the same is true for each year thereafter, Mr. Shansab told you that whatever his allocation was was not his fair allocation but was a punishment allocation? |
| A: | He told me that the allocation continued on the same method going forward – |
| Q: | Right. |
| A: | –that he wasn't treated fairly. |

(Certification of Michael S. Waters, Ex. 2, p. 97-103.)

Based on Markovitz's own admissions, he relied on factual assertions and assumptions

provided by Shansab without doing any independent analysis and without providing a factual

basis for his conclusion that Coast was damaged by unfair allocation.  Such speculation should

**NOT FOR PUBLICATION**

bar the expert's testimony because an "expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation." Paoli II, 35 F.3d at 742 (citations and internal quotations omitted); Oddi v. Ford Motor Co., 234 F.3d 136, 156 (3d Cir. 2000) ("Although Daubert does not require a paradigm of scientific inquiry as a condition precedent to admitting expert testimony, it does require more than [a] haphazard, intuitive inquiry."). The Third Circuit has cautioned against the admission of an opinion without sufficient factual predicate, referring to such an opinion as a "castle made of sand." Elcock v. K-Mart Corp., 233 F.3d 734, 755 (3d Cir. 2000); see also Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 99 (3d Cir. 1983) (ruling that the trial judge was in error by "permitting plaintiff's expert to testify as to plaintiff's future earnings loss without first requiring plaintiff to establish a factual basis for this testimony"); Benjamin v. Peter's Farm Condo. Owner's Ass'n., 820 F.2d 640, 643 (3d Cir. 1987) (finding a district court was in error in admitting expert testimony regarding post-injury earning capacity that was based on the "personal belief" of the plaintiff). Moreover, a proposed expert opinion based on factual assumptions not present in the case "cannot be said to 'assist the trier of fact,' as Rule 702 requires" because "[t]his type of opinion misleads the factfinder and arguably does not comply with the 'fit' requirement." Elcock, 233 F.3d at 756.

Plaintiff points to additional specific evidence to support the conclusion that Markovitz's opinion is unreliable. As example, plaintiff notes that had Markovitz looked at Coast's actual allocation records, he would have discovered that in 1995, the first year in which Shansab alleges Coast was provided an unfair allocation, Coast was actually offered 187 cars by plaintiff but that Coast only purchased 171 cars leaving 16 units still available to Coast. (Certification of

-23-

**NOT FOR PUBLICATION**

Raymond Dupell, Ex. A)  Because Markovitz based the unfair allocation calculations out from

the 1995 numbers, his failure to consider that more cars were allocated to Coast than were

actually purchased necessarily impacted the allocation calculations in later years, and by

definition were necessarily unreliable.

Markovitz also offers that his damage assessment was a result not just of unfair allocation

in the total number of cars but also resulted from the losses attributable to allegedly undesirable

cars.  Specifically, Coast defendants claim that plaintiff provided a disproportionate mix of cars

to Coast that were either difficult models to sell, or plaintiff allegedly provided a number of '94

cars at the end of the year just as the '95 model was being offered making it difficult to sell at a

profit.  Overall, Markovitz provided no factual basis for his assessment of a $1,000 compensation

amount for these types of cars.  Additionally, evidence suggests that Coast received equivalent

and sometimes fewer numbers of difficult to sell cars than the average Mercedes-Benz dealer in

the region.  (See Certification of Raymond Dupell, Exs. B & C.)

      2.  *Challenge to Del Rocci's Opinion*[7]

Coast defendants offer the expert testimony of Del Rocci in order to value the franchise

rights of the coast dealership on the date the franchise was terminated and to determine a future

stream of income based on that value.  (See Certification of Michael S. Waters, Ex. 5, p. 2.)  In

determining the valuation of the franchise at the date of termination, Del Rocci based his

---

[7]  The Court received notice from Coast defendants in June of 2006 of the unfortunate death of Dr. Del Roccili.  Coast defendants seek to substitute the testimony of Dr. Del Roccili with another expert based on the same report.  The Court need not consider this request given its discussion below regarding the inadmissibility of Dr. Del Roccili's report.

**NOT FOR PUBLICATION**

conclusion on the profits projected by Markovitz in his report.[8]   Because the Court has excluded

the report of Markovitz based on its failure to conform with the requirements of Fed. R. Evid.

702 of reliability and fit, and because Del Rocilli's report is entirely dependent upon the methods

and calculations performed in Markovitz's report, Del Rocilli's report must likewise be stricken.

Here, Markovitz and Del Rocilli's opinions are based on nothing more than speculation

and subjective belief in the truth of the assertions made by Shansab about unfair allocation

without any factual basis for those conclusions.  They are thus unreliable and inadmissible under

Fed. R. Evid. 702.  Because of the inadmissability of these opinions, Coast defendants cannot

establish damages associated with plaintiff's allegedly discriminatory allocation of automobiles.

This failure to prove damages is fatal to Coast defendant's counterclaims Five through Ten.  The

---

[8]  In his deposition testimony, Markovitz explained the connection between his report and the valuation report including future projected income stream that was conducted by Del Roccili:

> A:    If I remember correctly, it was decided that the furthest we could go in projecting the lost profits was to the date of the termination of the franchise.
> Q:    That's what you were going to do?
> A:    Yeah.  And Sam Kursch was going to prepare the valuation of the franchise as of that date.
> Q:    *And it was going to be based on the profits you projected during the operation of the franchise*?
> A:    Yes.
> Q:    And subsequently Dr. del Ricolli took the place of Mr. Kursch and did that job?
> A:    That's correct.
> Q:    Did you have conversations with Dr. del Ricolli?
> A:    One or two.
> Q:    And what can you recall of those conversations?
>
> A:    They were similar to the conversation we had that day with Sam Kursch and what information he was going to need to prepare his report.
> Q:    And that resulted in the same arrangement?
> A:    Yes.

(Certification of Michael S. Waters, Ex. 2, p. 60-61.)

**NOT FOR PUBLICATION**

Court therefore grants summary judgment in favor of plaintiff on those counterclaims.

## II.  COAST DEFENDANTS' MOTIONS

### A. Coast Defendants' Motions for Summary Judgment

Coast defendants seek summary judgment on all three claims of plaintiff's Amended Complaint.  In addition, Coast defendants seek summary judgment on Counts One (violation of the NJFPA) and Two (breach of contract) of their counterclaims.[9]

To begin, summary judgment on Count Two of plaintiff's Amended Complaint and on Counts One and Two of the counterclaim in favor of Coast defendants is not appropriate given this Court's grant of summary judgment of these claims in favor of plaintiff.

Turning to Count One of the Amended Complaint, Coast defendants seek summary judgment on plaintiff's claim for an injunction based on Coast's alleged dilution of MBUSA's federal trademark by not using the proper designated indicia of the mark, such as signs, literature and other visible indicia of the mark pursuant to 15 U.S.C. § 1125(c).  Essentially, Coast defendants argue that plaintiff's Amended Complaint seeks "nothing more than injunctive relief" and that it has already "obtained the relief it sought."  Judge Cooper, in ruling on the motion for a

---

[9]  As the Court noted in footnote four, *supra*, Coast defendants argue that summary judgment in their favor is warranted on Counts One and Two because plaintiff failed to pay Coast defendants a certain sum owed for the return of parts as outlined by the franchise agreement.  The Court rejected this particular claim because in their counterclaim, Coast defendants seek damages that resulted from the improper <u>termination</u> of the franchise agreement, not for contractual amounts due under the agreement or that may be required by statute.  In addition, Coast defendants have raised the issue of alleged debt under the franchise agreement for the first time in this motion.  No mention of the debt was made in their counterclaim, nor did Coast defendants refer to the debt in answering plaintiff's interrogatories regarding contract damages.  Finally, no discovery regarding this debt was ever taken.  In sum, the Court will not address Coast defendants' claim of debt owed under the franchise agreement in the context of the pending summary judgment motions.

**NOT FOR PUBLICATION**

preliminary injunction, declined to enter such relief as to Count One, the dilution claim, because there was no irreparable harm to plaintiff given that the franchise was due to be terminated and the problem of dilution would be mooted by termination of the franchise agreement.  That remains the case now.  This Court has determined that termination of the franchise was proper and has granted a permanent injunction on Count Two of plaintiff's Amended Complaint.  To that end, it appears that the relief sought under Count One is now moot.

Coast defendants' remaining argument in its multiple summary judgment motions is its assertion that summary judgment is appropriate on plaintiff's claim for rescission and damages based on Coast defendants' fraud in the inducement of the franchise agreement.  In order to rescind the franchise agreement, the party seeking rescission must prove by clear and convincing evidence: "(1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party."  Coast Automotive Group, Ltd. v. VW Credit, Civ. No 97-2601, at *15 (D.N.J. Oct. 30, 2002) (slip opinion); see also Granite State Ins. Co. v. UJEX, Inc., 2005 WL 1618792, at *6 (D.N.J. July 11, 2005) (quoting First American Title Ins. v. Lawson, 798 A.2d 661, 667 (N.J. Super. Ct. App. Div. 2002), rev'd in part on other grounds, 827 A.2d 230 (N.J. 2003)).  The element of detrimental reliance requires the moving party to demonstrate damages.  See Coast Automotive Group, Ltd. v. VW Credit, Civ. No 97-2601, at *17.  Coast defendants allege that the record does not reflect any damages suffered by plaintiff.  As alleged in the Amended Complaint, plaintiff claims that it suffered damages based on Coast defendants' fraudulent inducement because the "Dealer Agreement is subject to rescission and Coast's use of the trademarks, therefore has been and is unlicensed and unauthorized."  In other words, plaintiff alleges damages based on the

**NOT FOR PUBLICATION**

unlicenced use of its trademarks.  This argument makes little sense because it puts the cart before the horse.  Even if the Court were to accept plaintiff's claim for damages, Coast defendants note that "[i]n a suit for money damages for fraud . . .[i]n order to obtain equitable relief such as rescission . . . clear and convincing proof [of damages] is required."  Batka v. Liberty Mutual Fire Ins. Co., 704 F.2d 684 (3d Cir. 1983).  Plaintiff argues generally that it was damaged by Coast's refusal to accept cars that were allocated to them and that customer satisfaction suffered greatly.  However, this harm is completely unrelated to the underlying misstatements made by Coast defendants in its application for the franchise dealership.  Plaintiff has produced no evidence that it suffered any trademark damage resulting from the alleged misrepresentations.

Even assuming the existence of a genuine issue of material fact relating to the claim of equitable fraud, specifically the element of damages, the Court finds that rescission is not an appropriate remedy under the circumstances of this case.  In general, rescission is available under New Jersey law when one of the parties to a contract commits fraud in inducing the other party to enter into the contract.  See Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114, 130-31 (1962).  "If a party to a contract is guilty of misrepresentation, the contract is voidable and the victim may rescind the contract."  Cooper v. Borough of Wenonah, 977 F. Supp. 305, 313 (D.N.J. 1997).  The remedy of rescission results in the "unmaking" of the parties' agreement from the beginning as opposed to mere termination.  First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1296 (Fed. Cir. 1999).  A court's application of the rescission remedy is discretionary should be made only in extraordinary circumstances.  See id.; Hilton Hotels Corp. v. Piper Co., 214 N.J. Super. 328, 336 (Ch. Div. 1986).  In addition, a court must apply rescission only in circumstances where it is clear that the court can return the parties to the

-28-

NOT FOR PUBLICATION

"ground upon which they originally stood." Id. (quoting Driscoll v. Burlington-Bristol Bridge

Co., 28 N.J. Super. 1, 4 (App. Div. 1953)); see also Hamel v. Allstate Ins. Co., 233 N.J. Super.

502, 506-07 (App. Div. 1989); Sempre Constr. Co. v. Tp. of Mt. Laurel, 196 N.J. Super. 204,

209 (Ch. Div. 1984).

   The passage of time in this case and the complicated relationship between the parties

demonstrate to the Court that a return to the "ground upon which they originally stood" would be

an exercise in futility.  To say that Coast's franchise relationship with plaintiff and its other

dualed car manufacturers including Porshe, Audi and Volkswagen was strained would be a mild

characterization of what has ultimately been a tumultuous relationship.  Throughout this long

relationship, both parties have expended large amounts of capital and unmaking these

transactions would be next to impossible.  See, e.g., Walter v. Holiday Inns, Inc., 784 F. Supp.

1159, 1166 (D.N.J. 1992) ("Prior to and after the [execution of the contract], the defendants

infused some $24.8 million dollars of capital into the project for development. Subsequent to

this, the defendants have contributed $215 million for maintenance and upgrading of the facility.

Under these circumstances, it would be virtually impossible for the court to 'unmake' the buy-out

transaction so as to restore the parties to the status quo ante.").  Because the equities in this case

militate against rescission of the franchise agreement and because plaintiff has presented no clear

and convincing evidence of trademark damages that resulted from the misstatements of Coast

defendants, Coast defendants motion for summary judgment on Count Three is granted.

**B.  Coast Defendants' Motion to Exclude the Expert Testimony of Albert Parziale**

   The Coast defendants also moved separately to dismiss the sole expert witness proffered

by plaintiff.  Plaintiff offered the opinion of Mr. Parziale to address the various financial and

**NOT FOR PUBLICATION**

accounting issues relating to Coast's financial records and to provide expert opinions on the

circumstances surrounding plaintiff's termination of the Coast franchise and the overall operation

of the dealership.  Essentially, Coast defendants argue that the opinion that would be offered by

Mr. Parziale is "irrelevant" because it addresses "only a narrow subject - the financial affairs of

Tamim Shansab."  However, a review of Mr. Parziale's report demonstrates that his opinion was

not limited to the financial affairs of Mr. Shansab but deals extensively on the financial condition

of Coast and Mr. Shansab who was its principal.  Such testimony is certainly relevant.  <u>See</u>

<u>generally</u> <u>In re Ikon Office Solutions, Inc.</u>, 194 F.R.D. 166, 179 (E.D. Pa. 2000).  Moreover,

Coast defendants' motion is irrelevant in light of this Court's grant of summary judgment on

Count Two of the Amended Complaint in favor of plaintiff.  In so granting, the Court recognizes

the preclusive effect of the Third Circuit's determination that Coast's was in substantial

noncompliance with the franchise agreement by materially misrepresenting its financial ability in

the dealer application.  Because Mr. Parziale's offered opinions relate to this subject which the

Court has already disposed of, Coast defendants' motion is denied as moot.

### III.  DAVID MICHAEL AND CONTEMPORARY'S MOTIONS

Third-party defendants David Michael and Contemporary move for summary judgment

on all of Coast and Shansab's counterclaims alleged against them (Counts Five through Ten).

Because the Court has already granted summary judgment on these counts in favor of plaintiff

based on Coast defendants inability to demonstrate damages as a result of the exclusion of its

experts' testimony, these claims are likewise dismissed as to third-party defendants.  Third-party

defendants are entitled to summary judgment.

**NOT FOR PUBLICATION**

## CONCLUSION

For the forgoing reasons, the Court grants to plaintiff summary judgment on Count Two

of its Amended Complaint and on Counts One, Two, and Five through Ten of Coast defendants'

counterclaims.  Relatedly, the Court grants plaintiff's motion to strike the expert testimony of

Markovitz and Del Roccili and grants plaintiff's request for a permanent injunction.  The Court

denies the Coast defendants' motions with the exception of their motion for summary judgment

on Count Three of plaintiff's Amended Complaint, which is granted.  The Court grants third-

party defendants' motion for summary judgment as to Counts Five through Ten of Coast

defendants' Counterclaims.


**s/William H. Walls**
United States District Judge

**NOT FOR PUBLICATION**

**Appearances**

Michael S. Waters
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079

Bart D. Cohen
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103-6305

Geoffrey J. Hill
1 Maynard Drive, Suite 6
N.U.S. Corporate Plaza
Park Ridge, New Jersey 07656

Lisa J. Rodriguez, Esq.
Rodriguez & Richards, LLC
3 Kings Highway West
Haddonfield, New Jersey 08033

Paul T. Gallagher, Esq.
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
1100 New York Avenue, N.W., Suite 500
Washington, D.C. 20005

Anthony J. Bolognese, Esq.
Bolognese & Assocs., L.L.C.
One Penn Center, Suite 650
1617 JFK Boulevard
Philadelphia, PA 19103

Jeffrey Corrigan, Esq.
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103

James Moss, Esq.
Stacy Rosenberg, Esq.
Herrick, Feinstein LLP
2 Park Avenue
New York, New York 10016

**NOT FOR PUBLICATION**

Steven M. Edwards, Esq.
Hogan & Hartson, L.L.P.
875 Third Avenue
New York, New York 10022

John H. Eickemeyer, Esq.
Vedder, Price, Kaufman & Kammholz
805 Third Avenue
New York, New York 10022-2203

Andrew P. Napolitano, Esq.
Fischbein, Badillo, Wagner, Harding
909 Third Avenue
New York, New York 10022

Jeffrey Heilman, Esq.
Zeisler & Zeisler
558 Clinton Avenue
Bridgeport, CT 06605-0186

Robert J. Burzichelli, Esq.
Theodore C. Richman, Esq.
Soloman Richman Greenberg P.C.
3000 Marcus Avenue
Lake Success, NY 11402

Eric L. Chase, Esq.
Bressler, Amery & Ross
325 Columbia Turnpike
Florham Park, New Jersey 07932

Leonard A. Bellavia, Esq.
John Ciulla, Esq.
Bellavia & Kassel, P.C.
200 Old Country Road, Suite 400
Mineola,NY 11501

Irvin M. Freilich, Esq.
Robertson, Freilich, Bruno & Cohen, L.L.C.
1 Riverfront Plaza, 4t1~ Floor
Newark, NJ 07102

Stephen N. Dermer, Esq.
Lowenstein Sandler, P.C.

**NOT FOR PUBLICATION**

65 Livingston Avenue
Roseland, New Jersey 07068-1791

Peter Efros, Esq.
John W. Wopat, III, Esq.
Efros & Wopat
130 Maple Avenue, Suite lOB
P.O. Box 534
Red Bank, New Jersey 07701

Jay Friedrich, Esq.
Gallo Geffner Fenster, P.C.
Country Club Plaza
West 115 Century Road
Paramus,NJ 07652

Robert J. Kipnees, Esq.
Greenbaum, Rowe, Smith, Ravin & Himmel
99 Wood Avenue South
Iselin, New Jersey 08830-27 12

Charles T. Locke, III, Esq.
Locke & Herbert
1114 Avenue of the Americas, 40th Floor
New York, New York 10036

Thomas Madden, Esq.
Hack, Piro, O'Day, Merklinger, Wallace & McKenna
30 Columbia Turnpike (P.O. Box 941)
Florham Park, NJ 07932

Martin G. Margolis, Esq.
The Margolis Law Firm, P.A.
Sixty Pompton Avenue (Route 23)
Verona, NJ 07044

Michael McLaughlin, Esq.
Wasserman, Jurista & Stolz
225 Millburn Avenue, Suite 207
P.O. Box 1029
Millburn, New Jersey 07041

Michael Morea, Esq.
Cole, Schotz, Meisel, Forman & Leonard P.C.

**NOT FOR PUBLICATION**

Court Plaza North, 4th Floor
25 Main Street (P.O. Box 800)
Hackensack, NJ 07602

Frederick Newman, Esq.
Salamon, Gruber, Newman & Blaymore, PC
97 Powerhouse Road
Roslyn Heights, NY 11577

John A. Adler, Esq.
Heliring Lindeman Goldstein & Siegal LLP
One Gateway Center
Newark, NJ 07102

Raymond A. Peck, Esq.
35 Montauk Highway
Southampton, NY 11968

Stephen G. Phillips, Esq.
Watson Enterprises Incorporated
261 West Putnam Avenue
Greenwich, CT 06830

Robert B. Nussbaum
Saiber, Schlesinger Satz & Goldstein, LLC
One Gateway Center, 13th Floor
Newark, NJ 07102-5311

Jonathan S. Feinsilver, Esq.
Jonathan S. Feinsilver, P.C.
292 Fifth Avenue, 4th Floor
New York, NY 10001

Patrick M. Reilly, Esq.
DelBello, Donnellan, Weingarten,
Tartaglia, Wise & Wiederkehr, LLP
One North Lexington Avenue
White Plains, New York 10601

Michael G. Santangelo, Esq.
Anthony Mangone, Esq.
Servino, Santangelo & Randazzo, LLP
One North Lexington Avenue
White Plains, New York 10601

**NOT FOR PUBLICATION**

James Serota, Esq.
Philip R. Sellinger, Esq.
Harry P1mm, Esq.
Greenberg Traurig, LLP
885 Third Avenue
New York, New York 10022

John S. Siffert, Esq.
Lankier Siffert & Wohi LLP
33rd Floor, 500 Fifth Avenue
New York, New York 10110-3398

Franklyn C. Steinberg III, Esq.
Law Offices of Franklyn C. Steinberg III
One Lamington Road
Somerville, New Jersey 08876

David S. Stone, Esq.
Boics Schiller & Flexner
150 JFK Parkway
Short Hills, New Jersey 07078

Gordon C. Strauss, Esq.
350 Alexander Street
Princeton, NJ 08540

David M. Taus, Esq.
Francis J. DeVito, P.C.
661 Main Street
Hackensack, New Jersey 07601

Charles Caranicas, Esq.
Ronald B. Weisenberg, Esq.
Vedder, Price, Kaufman & Kammholz
354 Eisenhower Parkway, Plaza II
Livingston, New Jersey 07039-1023

Laurence B. Orloff, Esq.
Orloff, Lowenbach, Stifelman & Siegel
101 Eisenhower Parkway
Roseland, New Jersey 07068